**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **AMGUARD INSURANCE COMPANY**<br>39 Public Square,<br>Wilkes-Barre, PA 18703<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CHAMPION FIRE & SECURITY, LLC**<br>2701 W. Plano Parkway, STE 500<br>Plano, TX 75075<br><br>**AND**<br><br>**APS FIRECO LLC**<br>8301 E. 51st Street, STE 150<br>Tulsa, OK 74146<br><br>**AND**<br><br>**MARMIC FIRE & SAFETY CO., INC.**<br>1014 S Wall Ave.,<br>Joplin, MO 64801<br><br>**AND**<br><br>**HYPHEN CONSTRUCTION GROUP, INC.**<br>5608 Ventana Trail<br>Dallas, TX 75252<br><br>**Defendants.** | **CIVIL ACTION NO.:**<br><br>**JURY TRIAL DEMANDED** |

# COMPLAINT

Plaintiff, AmGuard Insurance Company, by and through its undersigned counsel, de Luca Levine LLC, hereby demands judgment against the above-named Defendants, and in support thereof, alleges the following:

**PARTIES**

1. Plaintiff, AmGuard Insurance Company (hereinafter "AmGuard"), is a corporation organized and existing under the laws of the State of Nebraska, with its principal place of business located at 39 Public Square, Wilkes-Barre, PA 18703 and at all times material hereto was duly authorized to engage in the business of insurance in the State of Oklahoma. Plaintiff is in the business of insurance and, at all times relevant hereto, was authorized to provide the insurance policy described herein.

2. At all times relevant hereto, Plaintiff provided property insurance (*inter alia*) via a policy issued to Wortham Hospitality, LLC, ("Wortham", "insured" or "subrogor") in connection with its business property located at 410 N. 32nd Street, Perry, OK 73077 ("subject property"), under a policy of insurance which was in full force and effect on all relevant dates, and at all relevant times.

3. In the wake of the incident described below, as a result of claims made on said policy (which were duly paid pursuant thereto), Plaintiff became subrogated to certain recovery rights and interests of the subrogor for monies paid thereunder, including the claims giving rise to this action.

4. Defendant, Champion Fire & Security, LLC (hereinafter "Champion") is a corporation existing under the laws of the State of Texas with its principal place of business located at 2701 West Plano Parkway, Suite 500, Plano, TX 75075, and was authorized to do business within the State of Oklahoma. Champion regularly conducts business in the State of Oklahoma.

5. At all times material hereto, upon information and belief, Defendant,

Champion, was in the business of designing and installing fire protection and sprinkler systems, and designed and installed the sprinkler system at issue in this action

6. Defendant, APS Fireco LLC (hereinafter "APS") is a corporation existing under the laws of the State of Oklahoma with its principal place of business located at 8301 E. 51st Street, STE 150, Tulsa, OK 74146, and was authorized to do business within the State of Oklahoma. APS regularly conducts business in the State of Oklahoma.

7. At all times material hereto, upon information and belief, APS was engaged in the business of maintaining, inspecting, servicing, testing, and repairing fire protection and sprinkler systems, and, was responsible for maintaining and inspecting the sprinkler system at issue in this action.

8. Defendant, Marmic Fire & Safety Co., Inc. (hereinafter "Marmic") is corporation existing under the laws of the State of Missouri with its principal place of business located at 1014 S Wall Ave., Joplin, MO 64801, and was authorized to do business within the State of Oklahoma. Marmic regularly conducts business in the State of Oklahoma.

9. At all times material hereto, upon information and belief, Marmic was engaged in the business of maintaining, inspecting, servicing, testing, and repairing fire protection and sprinkler systems, and, was responsible for maintaining and inspecting the sprinkler system at issue in this action.

10. Defendant, Hyphen Construction Group, Inc. (hereinafter "Hyphen") is a corporation existing under the laws of the State of Texas with its service of process address located at 5608 Ventana Trail, Dallas, TX 75252, and was authorized to do business within

the State of Oklahoma. Hyphen regularly conducts business in the State of Oklahoma.

11. At all times material hereto, upon information and belief, Defendant, Hyphen, was the original general contractor responsible for the construction of the Property, including the conditions in which the sprinkler system at issue was installed.

**JURISDICTION AND VENUE**

12. Jurisdiction is based on 28 U.S.C. §1332(a)(1) as this action involves a controversy between citizens of different states. Moreover, the amount in controversy exceeds the jurisdictional threshold of this Court (exclusive of interest and costs).

13. Venue is proper in this district based on 28 U.S.C. §1391(b)(2) & (3) in that the loss location is located in Noble County which is within this district.

**STATEMENT OF FACTS**

14. Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

15. The subject property which does business and operates as the Microtel Inn & Suites by Wyndham Perry, a four-story hotel located in Perry, Oklahoma.

16. The subject property is protected by an automatic fire sprinkler system (the "Sprinkler System"). A sprinkler system of this type is required to include adequate freeze protection, including proper insulation and/or drainage, to prevent water within the piping from freezing, expanding, and rupturing the pipe.

17. Champion designed and installed the Sprinkler System and, in doing so, was responsible for ensuring that the Sprinkler System was designed and installed with adequate freeze protection, including proper insulation of the piping appropriate to the

property's location and climate.

18. Hyphen served as the original general contractor for the construction of the property and was responsible for constructing the property, including the areas in and around which the Sprinkler System was installed and the insulation of those areas.

19. Since 2021, APS and Marmic have been responsible for the ongoing maintenance, inspection, servicing, and testing of the Sprinkler System, and repaired the Sprinkler System following a freeze break in 2023.

20. The property has a history of sprinkler freeze breaks, including freeze breaks in 2016 and 2023, each of which placed Defendants on notice that portions of the Sprinkler System were susceptible to freezing and rupture due to inadequate insulation and/or freeze protection.

21. On or about February 22, 2025, a portion of the Sprinkler System located above the fitness center/gym area of the property froze and ruptured, discharging water and causing extensive damage to the property and its contents (the "2025 Loss").

22. Upon investigation, it was determined that the 2025 Loss was caused by the installation of the Sprinkler System piping above the insulation, which blocked rising heat from reaching the piping and left the piping susceptible to freezing temperatures.

23. Thereafter, on or about January 26, 2026, a portion of the Sprinkler System located in close proximity to the 2025 Loss at the property again froze and ruptured, discharging water and again causing extensive damage to the property and its contents (the "2026 Loss").

24. Similarly, upon investigation, it was determined that the 2026 Loss resulted

from the same or similar conditions within the ceiling space. In this instance, the design of the building, coupled with the placement of the sprinkler system only allowed for a few inches of insulation between the piping and the external wall allowing the piping susceptible to freezing temperatures.

25. The 2025 Loss and the 2026 Loss (together, the "Losses") each resulted from the same or substantially similar defective and dangerous conditions, the inadequate design, installation, construction, insulation, maintenance, inspection, servicing, testing, and/or repair of the Sprinkler System, which Defendants, together and individually, created, failed to remedy, and/or failed to warn against, notwithstanding prior notice of the Sprinkler System's susceptibility to freezing.

26. The Losses were directly and proximately caused by, or were caused in substantial part by, the acts and omissions of each Defendant as described herein.

27. As a direct and proximate result of the Losses, the Insured sustained damages, including physical damage to the building and business personal property, remediation and repair costs, lost business income and business interruption, and other consequential losses, which Plaintiff paid pursuant to the Policy in an amount in excess of $75,000.00.

**COUNT I – NEGLIGENCE**
**PLAINTIFF v. CHAMPION FIRE & SECURITY, LLC**

28. Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

29. Defendant, Champion owed a duty of reasonable care to design and install

the Sprinkler System with reasonable care, skill, and diligence, including a duty to provide adequate freeze protection appropriate to the property's location and climate.

30. The aforementioned damages were the direct and proximate result of the negligence and carelessness of Champion, by and through its employees, agents, technicians, vendors, subcontractors, and/or servants, more specifically described as follows:

(a) failing to exercise reasonable care in the following manner:

i. failing to properly and adequately supervise, monitor and/or manage the design, installation, service, maintenance and/or inspection of the sprinkler/fire suppression system, and its handling thereafter, so as to prevent this loss;

ii. creating, maintaining or permitting to be maintained a hazardous and/or dangerous condition of the sprinkler system/fire suppression system being susceptible to freezing and breaking;

iii. failing to take adequate measures to ensure that the sprinkler/fire suppression system was properly and safely installed by ensuring heat or appropriate insulation;

iv. failing to take necessary precautions to protect Plaintiff and others by remediating, marking, fixing or notifying and/or alerting Plaintiff concerning the existence of the aforementioned unsafe condition as noted above; and

v. failing to have the system properly designed, installed, maintained, serviced, inspected and/or tested to make sure that it functioned and was installed properly as required by the sprinkler pipe manufacturer’s specifications and instructions; the National Fire Protection Association 25 guidelines; and/or the County of Noble requirements.

(b) failing to adequately instruct, supervise and/or train servants, employees and agents as to the proper ways to perform the tasks set forth in subparagraph (a);

(c) failing to adequately warn Plaintiff and others of the dangers and hazardous conditions resulting from the conduct set forth in subparagraph (a) above;

(d) failing to provide, establish, and/or follow proper and adequate controls so as to ensure the proper performance of the tasks set forth in subparagraph (a) above;

(e) failing to properly monitor the work of all agents and/or employees during the inspection, maintenance, and/or upkeep of the sprinkler/fire suppression system to ensure it was safe and in compliance with applicable safety standards; and

(f) failing to retain competent, qualified and/or able agents, employees or servants to perform the tasks set forth in subparagraph (a) above.

31. As a direct and proximate result of Defendant's aforementioned actions, and/or omissions, Plaintiff was caused to pay their insureds for the significant damages to its real and personal property as well as the imposition of additional hardships besides and Defendant is therefore liable to the Plaintiff for the damages.

**WHEREFORE,** Plaintiff, AmGuard Insurance Company, respectfully requests this Honorable Court enter judgment in its favor and against Defendant, Champion Fire & Security, LLC, in an amount in excess of $75,000.00, plus costs incident to this suit, delay damages and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

**COUNT II – BREACH OF CONTRACT**
**PLAINTIFF v. CHAMPION FIRE & SECURITY, LLC**

32. Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

33. Prior to commencing its work at the subject property, Defendant entered into a legally enforceable contract with the insured, whether expressed in writing or implied or otherwise existing by law.

34. Whether expressly stated in the contract or implied by law, Defendant

promised to perform its work at the subject property in a good, competent, and workmanlike manner with the care, skill, reasonable expedience, and faithfulness of a reasonable contractor.

35. In addition, whether expressly stated in the contract or implied by law, Defendant promised to provide quality workmanship and materials during the course of its work at the subject property.

36. Through the careless, negligent, and other unlawful conduct on the part of Champion, through its servants, employees, and/or agents as described herein, Champion breached the express and implied terms of the contract.

37. For its part, the insured performed all obligations under the aforementioned agreement, as well as all conditions precedent to recovery on the causes of action asserted herein.

38. As a direct and proximate result of such breach(es), the insured sustained and incurred damages as described herein.

39. As a direct and proximate result of the breach of contract by Champion, Plaintiff's insured sustained and incurred damage to its real and personal property, along with the imposition of additional expenses and hardship besides, in an amount in excess of $75,000.00.

40. As a result of claims made on said policy (which were duly paid pursuant thereto), Plaintiff became subrogated to certain rights and interests of its insured for monies paid thereunder, including the claims giving rise to the cause of action.

**WHEREFORE,** Plaintiff, AmGuard Insurance Company, respectfully requests this

Honorable Court enter judgment in its favor and against Defendant, Champion Fire & Security, LLC, in an amount in excess of $75,000.00, plus costs incident to this suit, delay damages and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

**COUNT III – BREACH OF IMPLIED WARRANTY**
**PLAINTIFF v. CHAMPION FIRE & SECURITY, LLC**

41. Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

42. In furtherance of the aforementioned services performed, Defendant, Champion, had impliedly warranted that all work performed would be done in a reasonably careful, prudent and workman-like manner, and/or with quality workmanship and that the materials and components it provided would be quality and free from defects.

43. Based upon the aforementioned improper conduct on the part of the Defendant, Champion, personally and through servants, employees, and/or agents as set forth above, Defendant, Champion, breached these warranties.

44. Plaintiff and the insured have performed all conditions precedent to recover based upon such breaches.

45. As a direct and proximate result of the breach of warranties by Defendant, the insured sustained and incurred damage to its real and personal property, along with the imposition of additional expenses and hardship besides, in an amount in excess of $75,000.00.

46. As a result of claims made on said policy (which were duly paid pursuant

thereto), Plaintiff became subrogated to certain rights and interests of the insured for monies paid thereunder, including the claims giving rise to the cause of action.

**WHEREFORE,** Plaintiff, AmGuard Insurance Company, respectfully requests this Honorable Court enter judgment in its favor and against Defendant, Champion Fire & Security, LLC, in an amount in excess of $75,000.00, plus costs incident to this suit, delay damages and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT IV – NEGLIGENCE
## PLAINTIFF v. APS FIRECO LLC

47. Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

48. As the entity responsible since 2021 for maintaining, inspecting, servicing, testing, and repairing the Sprinkler System, including the repair of the Sprinkler System following the 2023 and 2025 freeze breaks Defendant, APS owed a duty of reasonable care to maintain, inspect, service, test, install, and repair the Sprinkler System with reasonable care, skill, and diligence, in accordance with applicable fire-protection standards, including the NFPA 25 standards.

49. The aforementioned damages were the direct and proximate result of the negligence and carelessness of APS, by and through its employees, agents, technicians, vendors, subcontractors, and/or servants, more specifically described as follows:

(a) failing to exercise reasonable care in the following manner:

i. failing to properly and adequately supervise, monitor and/or manage the installation, service, maintenance, repair and/or inspection of the

sprinkler/fire suppression system, and its handling thereafter, so as to prevent this loss;

ii. creating, maintaining or permitting to be maintained a hazardous and/or dangerous condition of the sprinkler system/fire suppression system being susceptible to freezing and breaking;

iii. failing to take adequate measures to ensure that the sprinkler/fire suppression system was properly and safely installed, serviced, maintained, inspected, and repaired by ensuring heat or appropriate insulation;

iv. failing to take necessary precautions to protect Plaintiff and others by remediating, marking, fixing or notifying and/or alerting Plaintiff concerning the existence of the aforementioned unsafe condition as noted above; and

v. failing to have the system properly installed, maintained, serviced, inspected, repaired and/or tested to make sure that it functioned and was installed properly as required by the sprinkler pipe manufacturer's specifications and instructions; the National Fire Protection Association 25 guidelines; and/or the County of Noble requirements.

(b) failing to adequately instruct, supervise and/or train servants, employees and agents as to the proper ways to perform the tasks set forth in subparagraph (a);

(c) failing to adequately warn Plaintiff and others of the dangers and hazardous conditions resulting from the conduct set forth in subparagraph (a) above;

(d) failing to provide, establish, and/or follow proper and adequate controls so as to ensure the proper performance of the tasks set forth in subparagraph (a) above;

(e) failing to properly monitor the work of all agents and/or employees during the inspection, maintenance, and/or upkeep of the sprinkler/fire suppression system to ensure it was safe and in compliance with applicable safety standards;

(f) failing to retain competent, qualified and/or able agents, employees or servants to perform the tasks set forth in subparagraph (a) above;

(g) negligently repairing the Sprinkler System following the 2023 and 2025 freeze breaks, including failing to correct or address the conditions that rendered the piping susceptible to freezing; and

(h) failing to advise the Insured of the need for additional insulation, freeze protection, drainage, and/or other corrective measures.

50. As a direct and proximate result of Defendant's aforementioned actions, and/or omissions, Plaintiff was caused to pay their insureds for the significant damages to its real and personal property as well as the imposition of additional hardships besides and Defendant is therefore liable to the Plaintiff for the damages.

**WHEREFORE,** Plaintiff, AmGuard Insurance Company, respectfully requests this Honorable Court enter judgment in its favor and against Defendant, APS Fire Co., in an amount in excess of $75,000.00, plus costs incident to this suit, delay damages and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

**COUNT V – BREACH OF CONTRACT**
**PLAINTIFF v. APS FIRECO LLC**

51. Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

52. Prior to commencing its work at the subject property, Defendant entered into a legally enforceable contract with the insured, whether expressed in writing or implied or otherwise existing by law.

53. Whether expressly stated in the contract or implied by law, Defendant promised to perform its work at the subject property in a good, competent, and workmanlike manner with the care, skill, reasonable expedience, and faithfulness of a reasonable contractor.

54. In addition, whether expressly stated in the contract or implied by law, Defendant promised to provide quality workmanship and materials during the course of its work at the subject property.

55. Through the careless, negligent, and other unlawful conduct on the part of APS, through its servants, employees, and/or agents as described herein, APS breached the express and implied terms of the contract.

56. For its part, the insured performed all obligations under the aforementioned agreement, as well as all conditions precedent to recovery on the causes of action asserted herein.

57. As a direct and proximate result of such breach(es), the insured sustained and incurred damages as described herein.

58. As a direct and proximate result of the breach of contract by APS, Plaintiff's insured sustained and incurred damage to its real and personal property, along with the imposition of additional expenses and hardship besides, in an amount in excess of $75,000.00.

59. As a result of claims made on said policy (which were duly paid pursuant thereto), Plaintiff became subrogated to certain rights and interests of its insured for monies paid thereunder, including the claims giving rise to the cause of action.

**WHEREFORE,** Plaintiff, AmGuard Insurance Company, respectfully requests this Honorable Court enter judgment in its favor and against Defendant, APS Fire Co., in an amount in excess of $75,000.00, plus costs incident to this suit, delay damages and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

**COUNT VI – BREACH OF IMPLIED WARRANTY**
**PLAINTIFF v. APS FIRECO LLC**

60. Plaintiff incorporates by reference the preceding averments as though set

forth at length herein.

61. In furtherance of the aforementioned services performed, Defendant, APS, had impliedly warranted that all work performed would be done in a reasonably careful, prudent and workman-like manner, and/or with quality workmanship and that the materials and components it provided would be quality and free from defects.

62. Based upon the aforementioned improper conduct on the part of the Defendant, APS, personally and through servants, employees, and/or agents as set forth above, Defendant, APS, breached these warranties.

63. Plaintiff and the insured have performed all conditions precedent to recover based upon such breaches.

64. As a direct and proximate result of the breach of warranties by Defendant, the insured sustained and incurred damage to its real and personal property, along with the imposition of additional expenses and hardship besides, in an amount in excess of $75,000.00.

65. As a result of claims made on said policy (which were duly paid pursuant thereto), Plaintiff became subrogated to certain rights and interests of the insured for monies paid thereunder, including the claims giving rise to the cause of action.

**WHEREFORE,** Plaintiff, AmGuard Insurance Company, respectfully requests this Honorable Court enter judgment in its favor and against Defendant, APS Fireco LLC, in an amount in excess of $75,000.00, plus costs incident to this suit, delay damages and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

**COUNT VII – NEGLIGENCE**
**PLAINTIFF v. MARMIC FIRE & SAFETY CO., INC.**

66. Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

67. As the entity responsible since 2021 for maintaining, inspecting, servicing, testing, and repairing the Sprinkler System, including the repair of the Sprinkler System following the 2023 and 2025 freeze breaks Defendant, Marmic owed a duty of reasonable care to maintain, inspect, service, test, install, and repair the Sprinkler System with reasonable care, skill, and diligence, in accordance with applicable fire-protection standards, including the NFPA 25 standards.

68. The aforementioned damages were the direct and proximate result of the negligence and carelessness of Marmic, by and through its employees, agents, technicians, vendors, subcontractors, and/or servants, more specifically described as follows:

(a) failing to exercise reasonable care in the following manner:

i. failing to properly and adequately supervise, monitor and/or manage the installation, service, maintenance, repair and/or inspection of the sprinkler/fire suppression system, and its handling thereafter, so as to prevent this loss;

ii. creating, maintaining or permitting to be maintained a hazardous and/or dangerous condition of the sprinkler system/fire suppression system being susceptible to freezing and breaking;

iii. failing to take adequate measures to ensure that the sprinkler/fire suppression system was properly and safely installed, serviced, maintained, inspected, and repaired by ensuring heat or appropriate insulation;

iv. failing to take necessary precautions to protect Plaintiff and others by remediating, marking, fixing or notifying and/or alerting Plaintiff

concerning the existence of the aforementioned unsafe condition as noted above; and

v. failing to have the system properly installed, maintained, serviced, inspected, repaired and/or tested to make sure that it functioned and was installed properly as required by the sprinkler pipe manufacturer's specifications and instructions; the National Fire Protection Association 25 guidelines; and/or the County of Noble requirements.

(b) failing to adequately instruct, supervise and/or train servants, employees and agents as to the proper ways to perform the tasks set forth in subparagraph (a);

(c) failing to adequately warn Plaintiff and others of the dangers and hazardous conditions resulting from the conduct set forth in subparagraph (a) above;

(d) failing to provide, establish, and/or follow proper and adequate controls so as to ensure the proper performance of the tasks set forth in subparagraph (a) above;

(e) failing to properly monitor the work of all agents and/or employees during the inspection, maintenance, and/or upkeep of the sprinkler/fire suppression system to ensure it was safe and in compliance with applicable safety standards;

(f) failing to retain competent, qualified and/or able agents, employees or servants to perform the tasks set forth in subparagraph (a) above;

(g) negligently repairing the Sprinkler System following the 2023 and 2025 freeze breaks, including failing to correct or address the conditions that rendered the piping susceptible to freezing; and

(h) failing to advise the Insured of the need for additional insulation, freeze protection, drainage, and/or other corrective measures.

69. As a direct and proximate result of Defendant's aforementioned actions, and/or omissions, Plaintiff was caused to pay their insureds for the significant damages to its real and personal property as well as the imposition of additional hardships besides and Defendant is therefore liable to the Plaintiff for the damages.

**WHEREFORE,** Plaintiff, AmGuard Insurance Company, respectfully requests this Honorable Court enter judgment in its favor and against Defendant, Marmic Fire & Safety

Co., Inc., in an amount in excess of $75,000.00, plus costs incident to this suit, delay damages and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

**COUNT VIII – BREACH OF CONTRACT**
**PLAINTIFF v. MARMIC FIRE & SAFETY CO., INC.**

70. Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

71. Prior to commencing its work at the subject property, Defendant entered into a legally enforceable contract with the insured, whether expressed in writing or implied or otherwise existing by law.

72. Whether expressly stated in the contract or implied by law, Defendant promised to perform its work at the subject property in a good, competent, and workmanlike manner with the care, skill, reasonable expedience, and faithfulness of a reasonable contractor.

73. In addition, whether expressly stated in the contract or implied by law, Defendant promised to provide quality workmanship and materials during the course of its work at the subject property.

74. Through the careless, negligent, and other unlawful conduct on the part of Marmic, through its servants, employees, and/or agents as described herein, Marmic breached the express and implied terms of the contract.

75. For its part, the insured performed all obligations under the aforementioned agreement, as well as all conditions precedent to recovery on the causes of action asserted

herein.

76. As a direct and proximate result of such breach(es), the insured sustained and incurred damages as described herein.

77. As a direct and proximate result of the breach of contract by Marmic, Plaintiff's insured sustained and incurred damage to its real and personal property, along with the imposition of additional expenses and hardship besides, in an amount in excess of $75,000.00.

78. As a result of claims made on said policy (which were duly paid pursuant thereto), Plaintiff became subrogated to certain rights and interests of its insured for monies paid thereunder, including the claims giving rise to the cause of action.

**WHEREFORE,** Plaintiff, AmGuard Insurance Company, respectfully requests this Honorable Court enter judgment in its favor and against Defendant, Marmic Fire & Safety Co., Inc., in an amount in excess of $75,000.00, plus costs incident to this suit, delay damages and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

**COUNT IX – BREACH OF IMPLIED WARRANTY**
**PLAINTIFF v. MARMIC FIRE & SAFETY CO., INC.**

79. Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

80. In furtherance of the aforementioned services performed, Defendant, Marmic, had impliedly warranted that all work performed would be done in a reasonably careful, prudent and workman-like manner, and/or with quality workmanship and that the

materials and components it provided would be quality and free from defects.

81. Based upon the aforementioned improper conduct on the part of the Defendant, Marmic, personally and through servants, employees, and/or agents as set forth above, Defendant, Marmic, breached these warranties.

82. Plaintiff and the insured have performed all conditions precedent to recover based upon such breaches.

83. As a direct and proximate result of the breach of warranties by Defendant, the insured sustained and incurred damage to its real and personal property, along with the imposition of additional expenses and hardship besides, in an amount in excess of $75,000.00.

84. As a result of claims made on said policy (which were duly paid pursuant thereto), Plaintiff became subrogated to certain rights and interests of the insured for monies paid thereunder, including the claims giving rise to the cause of action.

**WHEREFORE,** Plaintiff, AmGuard Insurance Company, respectfully requests this Honorable Court enter judgment in its favor and against Defendant, Marmic Fire & Safety Co., Inc., in an amount in excess of $75,000.00, plus costs incident to this suit, delay damages and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

**COUNT X – NEGLIGENCE**
**PLAINTIFF v. HYPHEN CONSTRUCTION GROUP, INC.**

85. Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

86. Defendant, Hyphen, as the original general contractor for the construction of the property owed a duty of reasonable care to construct and insulate the areas in and around which the Sprinkler System with reasonable care, skill, and diligence, including a duty to provide adequate freeze protection appropriate to the property's location and climate.

87. The aforementioned damages were the direct and proximate result of the negligence and carelessness of Hyphen, by and through its employees, agents, technicians, vendors, subcontractors, and/or servants, more specifically described as follows:

(a) failing to exercise reasonable care in the following manner:

i. failing to properly and adequately supervise, monitor and/or manage the design, construction, installation, service, maintenance and/or inspection of the property, including the sprinkler/fire suppression system, and its handling thereafter, so as to prevent this loss;

ii. creating, maintaining or permitting to be maintained a hazardous and/or dangerous condition of the sprinkler system/fire suppression system being susceptible to freezing and breaking;

iii. failing to take adequate measures to ensure that the sprinkler/fire suppression system was properly and safely installed by ensuring heat or appropriate insulation;

iv. failing to take necessary precautions to protect Plaintiff and others by remediating, marking, fixing or notifying and/or alerting Plaintiff concerning the existence of the aforementioned unsafe condition as noted above; and

v. failing to have the system properly designed, installed, maintained, serviced, inspected and/or tested to make sure that it functioned and was installed properly as required by the sprinkler pipe manufacturer's specifications and instructions; the National Fire Protection Association 25 guidelines; and/or the County of Noble requirements.

(b) failing to adequately instruct, supervise and/or train servants, employees and agents as to the proper ways to perform the tasks set forth in subparagraph (a);

(c) failing to adequately warn Plaintiff and others of the dangers and hazardous conditions resulting from the conduct set forth in subparagraph (a) above;

(d) failing to provide, establish, and/or follow proper and adequate controls so as to ensure the proper performance of the tasks set forth in subparagraph (a) above;

(e) failing to properly monitor the work of all agents and/or employees during the inspection, maintenance, and/or upkeep of the sprinkler/fire suppression system to ensure it was safe and in compliance with applicable safety standards;

(f) failing to retain competent, qualified and/or able agents, employees or servants to perform the tasks set forth in subparagraph (a) above;

(g) negligently constructing the Property, including the areas housing the Sprinkler System, in a manner that left the piping susceptible to freezing;

(h) failing to provide and/or ensure proper insulation and freeze protection in the areas in and around the Sprinkler System; and

(i) failing to construct the Property in accordance with applicable building codes and standards.

88. As a direct and proximate result of Defendant's aforementioned actions, and/or omissions, Plaintiff was caused to pay their insureds for the significant damages to its real and personal property as well as the imposition of additional hardships besides and Defendant is therefore liable to the Plaintiff for the damages.

**WHEREFORE,** Plaintiff, AmGuard Insurance Company, respectfully requests this Honorable Court enter judgment in its favor and against Defendant, Hyphen Construction Group, Inc., in an amount in excess of $75,000.00, plus costs incident to this suit, delay damages and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

## COUNT XI – BREACH OF CONTRACT
## PLAINTIFF v. HYPHEN CONSTRUCTION GROUP, INC.

89. Plaintiff incorporates by reference the preceding averments as though set

forth at length herein.

90. Prior to commencing its work at the subject property, Defendant entered into a legally enforceable contract with the insured, whether expressed in writing or implied or otherwise existing by law.

91. Whether expressly stated in the contract or implied by law, Defendant promised to perform its work at the subject property in a good, competent, and workmanlike manner with the care, skill, reasonable expedience, and faithfulness of a reasonable contractor.

92. In addition, whether expressly stated in the contract or implied by law, Defendant promised to provide quality workmanship and materials during the course of its work at the subject property.

93. Through the careless, negligent, and other unlawful conduct on the part of Hyphen, through its servants, employees, and/or agents as described herein, Hyphen breached the express and implied terms of the contract.

94. For its part, the insured performed all obligations under the aforementioned agreement, as well as all conditions precedent to recovery on the causes of action asserted herein.

95. As a direct and proximate result of such breach(es), the insured sustained and incurred damages as described herein.

96. As a direct and proximate result of the breach of contract by Hyphen, Plaintiff's insured sustained and incurred damage to its real and personal property, along with the imposition of additional expenses and hardship besides, in an amount in excess of

$75,000.00.

97. As a result of claims made on said policy (which were duly paid pursuant thereto), Plaintiff became subrogated to certain rights and interests of its insured for monies paid thereunder, including the claims giving rise to the cause of action.

**WHEREFORE,** Plaintiff, AmGuard Insurance Company, respectfully requests this Honorable Court enter judgment in its favor and against Defendant, Hyphen Construction Group, Inc., in an amount in excess of $75,000.00, plus costs incident to this suit, delay damages and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

**COUNT XII – BREACH OF IMPLIED WARRANTY**
**PLAINTIFF v. HYPHEN CONSTRUCTION GROUP, INC.**

98. Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

99. In furtherance of the aforementioned services performed, Defendant, Hyphen, had impliedly warranted that all work performed would be done in a reasonably careful, prudent and workman-like manner, and/or with quality workmanship and that the materials and components it provided would be quality and free from defects.

100. Based upon the aforementioned improper conduct on the part of the Defendant, Hyphen, personally and through servants, employees, and/or agents as set forth above, Defendant, Hyphen, breached these warranties.

101. Plaintiff and the insured have performed all conditions precedent to recover based upon such breaches.

102. As a direct and proximate result of the breach of warranties by Defendant, the insured sustained and incurred damage to its real and personal property, along with the imposition of additional expenses and hardship besides, in an amount in excess of $75,000.00.

103. As a result of claims made on said policy (which were duly paid pursuant thereto), Plaintiff became subrogated to certain rights and interests of the insured for monies paid thereunder, including the claims giving rise to the cause of action.

**WHEREFORE,** Plaintiff, AmGuard Insurance Company, respectfully requests this Honorable Court enter judgment in its favor and against Defendant, Hyphen Construction Group, Inc., in an amount in excess of $75,000.00, plus costs incident to this suit, delay damages and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

Respectfully submitted,

**CATHCART & DOOLEY**

*/s/ Cary D. Dooley*
Cary D. Dooley, OBA #12648
2807 Classen Boulevard
Oklahoma City, OK 73106
Telephone: (405) 524-1110
Facsimile: (405) 524-4143
CDooley@CathcartDooley.com

**ATTORNEYS FOR PLAINTIFF**

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**